IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**WILLIE J. MCLEOD**                                                          **PLAINTIFF**

versus                                                    CIVIL ACTION NO. 2:06cv118KS-MTP

**MICHAEL J. ASTRUE[1],**                                                    **DEFENDANT**
**Commissioner of Social Security**

## REPORT AND RECOMMENDATION

Plaintiff Willie J. McLeod brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of a final decision of the Commissioner denying her claim for disability benefits.  The matter is now before the Court on the defendant's Motion for an Order Affirming the Decision of the Commissioner [7] and on the plaintiff's Motion for an Order Reversing the Decision of the Commissioner [6].  Having considered the pleadings, the transcript of the record and applicable law and being thus fully advised in the premises, the undersigned recommends that the Commissioner's decision be affirmed.

PROCEDURAL HISTORY

The plaintiff applied for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) pursuant to Titles II and XVI of the Social Security Act on July 23, 2001.  (Tr. 80-82).  She alleged disability as of February 7, 1998.  (Tr. 80, 96).  Her application was denied initially and upon reconsideration.  (Tr. 12-21).  On May 1, 2003, the hearing requested by the plaintiff was convened before Administrative Law Judge (ALJ) Wallace E. Weakley.  (Tr. 33-68).  The plaintiff, who was represented by counsel, appeared and testified

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for former Commissioner Jo Ann B. Barnhart as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

(Tr. 35-65) as did Kelley Hutchins, a vocational expert (VE). (Tr. 65-67). Having employed the five-step sequential evaluation process specified in 20 C.F.R. § 404.1520(b)-(f)[2], on September 22, 2003, the ALJ rendered his decision that the plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 15-21). After the Appeals Council denied review of the ALJ's initial decision on the plaintiff's claims, the plaintiff sought judicial review, and an agreed Order of Remand was issued by the Court in February of 2005. (Tr. 451-452).

On October 14, 2003, the plaintiff filed new applications for DIB and SSI benefits alleging disability since the time of the denial of her initial applications. (Tr. 471-473, 635-639). After these applications were denied initially and upon reconsideration, the plaintiff requested another hearing. (Tr. 437). On May 4, 2005, the plaintiff, who was represented by counsel, appeared and testified before ALJ Edgar Perkerson. (Tr. 650-690). Once again, the VE, Kelley Hutchins appeared and testified at the hearing. (Tr. 684-690). Due to the pending remand order on the plaintiff's initial applications, a supplemental hearing for the purpose of consolidating the two claims was held on August 2, 2005 before ALJ Weakley. Another VE, Ronald Smith, testified at this hearing, as did the plaintiff. (Tr. 691-702).

ALJ Weakley issued a decision on September 15, 2005, denying the plaintiff's applications, finding that the plaintiff was not disabled within the meaning of the Social Security

---

[2] The five steps focus on:
  1) whether the claimant is engaged in substantial gainful activity
  2) whether the claimant has a severe impairment
  3) whether the claimant has an impairment that meets or equals an impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1,
  4) whether the claimant can return to prior relevant work, and
  5) whether there is work that exists in significant numbers in the national economy that the claimant can perform.

Act. (Tr. 363-376). The ALJ took into consideration the necessity that the plaintiff be allowed a sit/stand option, but with a job performed primarily while sitting and should be required to perform only limited walking and bending and no kneeling, stooping, or climbing. (Tr. 375). Although the ALJ found that the plaintiff is unable to perform her past relevant work, he found that she retained a residual functional capacity (RFC) for a reduced range of sedentary work that would allow her to perform jobs that existed in significant numbers in the national economy. (Tr. 363-376).

The plaintiff filed exceptions to and requested review of the ALJ's decision. (Tr. 353-356, 359). On March 4, 2006, the Appeals Council found no reason to review the ALJ's decision, thereby rendering that decision the final decision of the Commissioner. (Tr. 349-352). Accordingly, the Commissioner's decision is now subject to review by this Court.[3]

## FACTUAL/MEDICAL HISTORY

The plaintiff was forty-five (45) years old when the ALJ issued his decision (Tr. 80, 656) and a high school graduate. (Tr. 42, 399, 494). She had previously worked as a poultry packer, poultry deboner, green lumber dryer feeder, sewing machine operator, and garment folder (Tr. 97, 115-120, 504-509). The plaintiff had a biopsy to remove a fibrocystic mass from her left breast in August of 2001. (Tr. 151-152). Her major impairments are anxiety disorder and myasthenia gravis. (Tr. 193). Myasthenia gravis is a chronic, complicated disorder that causes muscle weakness and fatigue. (Tr. 347). She last worked for a short period in 2001 (Tr. 663) but alleges disability as of February 7, 1998. (Tr. 80, 96).

---

[3] As required by 42 U.S.C. § 405(g), the plaintiff instituted this action for review of the decision within sixty days after the Notice of Appeals Council Action, which was dated March 4, 2006. (Tr. 349).

In July 2001, the plaintiff was seen at Pine Belt Mental Healthcare complaining of "panic attacks" four (4) or five (5) times a week. She stated that she was still able to cook, clean the house, wash clothes and groom and dress herself. (Tr. 145-150). She was diagnosed with a panic disorder with agoraphobia. (Tr. 145). The plaintiff was prescribed Paxil on July 3, 2001 for anxiousness and heart racing, but had only taken two pills in September of 2001 (Tr. 155) when her diagnosis was limited to an adjustment disorder with an anxious mood. This reduction in diagnosis was due in part to her physician's opinion that she was at times malingering. (Tr. 157). The plaintiff was discharged from treatment at Pine Belt in June 2002, because of her noncompliance with treatment. (Tr. 622).

While in Tampa, Florida in 2002, the plaintiff was diagnosed with myasthenia gravis. She underwent surgery on June 10, 2002 to remove a lobulated mass and a thymic mass from her lung. (Tr. 195-196, 338). She was discharged from the hospital eight (8) days later with a prescription for myasthenia medication and pain medication. (Tr. 328). The plaintiff remained in Florida until January 1, 2003. (Tr. 672).

In January of 2003, the plaintiff's doctor at Leakesville Medical Center assured her that her myasthenia gravis and pain would slowly improve. (Tr. 333-334). In February of 2003, the plaintiff was seen at Leakesville Medical Center complaining of anxiety and a panic attack the night before, but she acknowledged that she took her Paxil only "every now and then." (Tr. 330). At her May, 2003 hearing, the plaintiff testified that the only pain she had in her chest was at the place where the surgery was performed, but later in the hearing she alleged pain all over her body all the time. (Tr. 51). The plaintiff was seen in June of 2003 at University Hospitals and Clinics for heart palpitations, but she denied any chest pain or shortness of breath. (Tr. 554). Her test

4

results came back normal. (Tr. 553, 555, 558).

The plaintiff once again became a client of Pine Belt Mental Health in November of 2003, and on October 8, 2004, she reported "doing ok" and that she felt her depression had decreased a little. (Tr. 618, 621). At her May 2005 hearing, the plaintiff testified that she had muscle weakness in her lungs, that she could not walk far without breathing difficulty, and that she had problems falling. (Tr. 664-665). The plaintiff acknowledged, however, that she was alright as long as she took her medications. (Tr. 666).

By this appeal, the plaintiff contends that the ALJ used incorrect legal standards and that his decision was not supported by substantial evidence. The plaintiff contends that the ALJ erred by failing to find that the plaintiff's impairment in fact "equals" a listed impairment, by failing to give sufficient consideration to the plaintiff's testimony regarding her pain, muscle weakness, and other limitations, by determining that the plaintiff's condition had significantly improved to the point that she was capable of sedentary work, by failing to consider the maintainability of work in determining her RFC, and by giving undue weight to one physician's opinion and insufficient weight to the vocational experts' opinions. The Commissioner contends that her decision should be affirmed as it is supported by substantial evidence in the record and utilizes correct legal standards.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* at 164 (citations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  A court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.  *Harrell v. Bowen*, 862 F. 2d 471, 475 (5th Cir. 1988).  If that decision is supported by substantial evidence, it is conclusive and must be affirmed.  *Selders*, 914 F.2d at 617.

## BURDEN OF PROOF

In *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, is not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes the following five-step sequential procedure, set forth in 20 C.F.R. § 404.1520(b)-(f):
>
> 1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

      2.  An individual who does not have a 'severe impairment' will not be found to be disabled.

      3.  An individual who meets or equals a listed impairment of the regulations will be considered disabled without consideration of vocational factors.

      4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.

      5.  If an individual's impairment precludes him from performing his past relevant work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform other work.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted).  A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the...analysis." *Id.*

## THE FIVE-STEP ANALYSIS IN THIS CASE

    The ALJ found at the first step of the sequential analysis that the plaintiff had not engaged in substantial gainful activity since 2001.  (Tr. 374).  At the second step, he found that the plaintiff's myasthenia gravis status post thymectomy was a "severe" impairment within the meaning of the Social Security Act.  However, he did not find that her impairment met or equaled a listed impairment as contemplated by step three.  Before moving to step four, the ALJ determined the plaintiff's residual functional capacity, concluding that the plaintiff retained the capacity for sedentary work with a sit/stand option to be performed primarily while sitting,

requiring only limited walking and bending and no kneeling, stooping or climbing. At step four, the ALJ found that the plaintiff was unable to perform her past relevant work (Tr. 375), but that her allegations of pain and other limitations were "to some degree exaggerated." (Tr. 370). At step five, based on the vocational experts' testimony, the ALJ found that the plaintiff retained the capacity to perform work that exists in significant numbers in the national economy and, consequently, that she was not disabled. (Tr. 375-376).

THE ISSUES

The plaintiff initially argues that the ALJ utilized incorrect legal standards in reaching his determination. Plaintiff's Brief [9] at 6. She takes exception first to the ALJ's step-three finding that her impairment is not equal to a "listed" impairment. She contends that she "suffers from many of the same conditions"[4] as "an undifferentiated connective tissue disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 14.00. To sustain her burden of establishing a listed impairment, the plaintiff "must provide medical findings that support each of the criteria" under the listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Although the plaintiff's disease has muscle involvement, respiratory involvement, cardiovascular involvement, mental involvement, and fatigue (Tr. 195-96, 286, 302, 325, 329, 619, 621, 629-34), as required by many of the disorders under § 14.00, an inquiry into the symptoms of such disorders is unnecessary because "Myasthenia Gravis" is itself a listed impairment. 20 C.F.R Pt. 404, Subpt. P, App. 1, Listing § 11.12. Only "*[i]f* you have an impairment that is *not* described in appendix 1," will the commissioner compare that impairment to "closely analogous *listed* impairments." 20 C.F.R. §

---

[4] See Plaintiff's Memorandum [9] in Support of Motion to Reverse the Decision of the Commissioner at 7.

404.1526(b)(2) (emphases added).

Listing section 11.12 requires "Myasthenia Gravis" with either a *significant* difficulty with speaking, swallowing, or breathing while on prescribed therapy or *significant* motor weakness of muscles of extremities on repetitive activity against resistance while on prescribed therapy. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 11.12 (emphases added). To show medical equivalence of her impairment to the "Myasthenia Gravis" listing, the plaintiff must show that she in fact has myasthenia gravis *and* that she exhibits the required symptoms in their required severities. Conversely, she can show "medical equivalence" to the myasthenia gravis listing if she does not exhibit one or more of the symptoms or one or more of the symptoms is not as severe as required, but she has other symptoms that are "at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

This she did not do. At no time did the plaintiff report any difficulty speaking or swallowing as a result of her impairment, and in June of 2003, she denied any chest pain or shortness of breath. (Tr. 554). At that time, all her test results came back normal (Tr. 553, 555, 558). Further, in October of 2004, the plaintiff reported "doing ok" and that her depression had decreased a little. (Tr. 618, 621), and in May of 2005 she reported breathing and other problems only when she has not taken her medications. (Tr. 666). Given that the "Myasthenia Gravis" listing in section 11.12 requires "significant difficulties...*while on prescribed therapy*" (emphasis added), the plaintiff's pain and breathing difficulties do not stand up to the listing requirements if they are suffered only when the plaintiff is not utilizing her prescribed therapy. Further, considering that such difficulties are not established by the medical evidence, the plaintiff did not carry her step-three burden of proof.

With respect to the ALJ's determination of the plaintiff's residual functional capacity, the plaintiff takes issue with the ALJ's failure to give sufficient consideration to the plaintiff's own testimony regarding her pain, muscle weakness and other limitations. Plaintiff's Brief [9] at 8. In his evaluation of the evidence in the record, the ALJ considered the plaintiff's allegations of pain and weakness, but believed the allegations to be somewhat exaggerated. (Tr. 370). This position is bolstered by the fact that there is no clinical evidence of pain or weakness suffered by the plaintiff sufficient to establish a disability. To be disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983). The only indication of her pain and muscle weakness comes from her own hearing testimony and self-reports to medical care providers. Further, "the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Wingo v. Bowen*, 852 F.2d 827, 830 (5th Cir. 1988) (citations omitted). Therefore, the ALJ was not in error when he found that the plaintiff's allegations of pain and muscle weakness are not supported by objective medical evidence. (Tr. 370).

The plaintiff next argues that the ALJ erred in finding that the plaintiff's condition had significantly improved to the point where she was capable of sedentary work. Plaintiff's Brief [9] at 8-9. She contends that no such significant improvement or ability to complete tasks necessary for sedentary work is shown by the medical evidence. *Id.* However, in making his determination, the ALJ considered all of the evidence of the record. (Tr. 368-373). Further, the plaintiff had the burden to provide evidence showing how her impairment(s) affected her functioning during the period she alleged disability. 20 C.F.R §§ 404.1512( c) and 416.912( c).

The only evidence in the record in this regard was the plaintiff's own allegations of pain in her chest at the place of surgery and of her inability to walk over fifty (50) feet or to raise her arms without pain. (Tr. 51, 57-58). As discussed above, however, the ALJ discounted much of this testimony because of his belief that it was exaggerated. (Tr. 370). The ALJ did, however, give the plaintiff "some benefit of doubt in finding she requires a sit-stand option" and additional exertional limitations. (Tr. 371).

Next, the plaintiff contends that the ALJ erred in finding that she had a residual functional capacity to perform other work. Plaintiff's Brief [9] at 9. Citing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the plaintiff argues that she is unable to maintain employment for a significant time because her pain would force her to stop and lie down periodically during the day. Plaintiff's Brief [9] at 11. Although, the vocational expert testified that a person with such severe pain would be unable to perform any job, (Tr. 701), the ALJ found that the plaintiff did not suffer from such severe pain (Tr. 370), and her residual functional capacity to perform other work was, therefore, not subject to such a limitation. (Tr. 371).

To be valid, however, the ALJ's determination of the plaintiff's ability to perform other work must be supported by substantial evidence. *Morris v. Bowen*, 864 F.2d 333, 335-336 (5th Cir. 1988). This evidence may be provided by the vocational expert's answer to a properly propounded hypothetical. *Id.* A hypothetical is adequate if it "takes into account all the restrictions reasonably warranted by the evidence." *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004). The ALJ properly discounted the plaintiff's allegations of pain because they were not reasonably warranted by the evidence. Therefore, the ALJ incorporated all the restrictions necessary for the plaintiff's functioning into his hypothetical, including a "sit/stand option with a

11

job being primarily a sitting job" with "limited walking and bending, [and] no kneeling, stooping, or climbing." (Tr. 699). Relying on the VE's response to the hypothetical, the ALJ found that the plaintiff was capable of performing the jobs of phone solicitor, dispatcher, and hand trimmer; jobs that exist in significant numbers in the regional and national economy. (Tr. 373-74).

The plaintiff further challenges the ALJ's "complete disregard" of the findings of the plaintiff's treating physicians regarding the plaintiff's ability to work. Plaintiff's Brief [9] at 10-11. However, the physicians' opinions regarding the plaintiff's disability are not controlling; determinations of disability or inability to work "are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)).

The plaintiff also contends that the Commissioner's decision is not supported by substantial evidence. Plaintiff's Brief [9] at 12. She argues that the ALJ gave undue weight to Dr. Thurman's evaluation of the plaintiff on September 17, 2001, including his opinion that the plaintiff was malingering. *Id.* She also argues that the ALJ gave insufficient weight to the vocational expert's opinion that the plaintiff could not perform any work if she had such severe pain as would require lying down periodically to relieve it. Plaintiff's Brief [9] at 13. As part of a disability determination, an ALJ is required to review the medical evidence and give weight to the various medical opinions contained in the record. 20 C.F.R. §§ 404.1527. However, even if a physician's opinion is given full weight, it is not controlling on the issue whether an individual is able to work. *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). Such matters are reserved for the Commissioner to decide based on the evidence in the record. 20 C.F.R. § 404.1527(e)(1). Here, the ALJ considered the medical and other evidence in the record (Tr. 368-

373), and gave appropriate weight to Dr. Thurman's opinion of malingering, because it was consistent with that evidence. (Tr. 370). Therefore, as discussed above, the ALJ properly determined that the plaintiffs allegations of pain were not sufficiently credible (Tr. 375). Since the ALJ properly found that the plaintiff did not suffer such severe pain, the VE's opinion that a person suffering from such pain would be unable to work is inconsequential.

Next, the plaintiff argues that the record was not fully developed when the Commissioner determined that the plaintiff was capable of sedentary work and, therefore, not disabled. Plaintiff's Brief [9] at 12. However, upon review of the cause during the May and August 2005 hearings, the ALJ had the entire record at his disposal and determined that the Commissioner's decision was consistent with the findings of the vocational expert considering the plaintiff's residual functional capacity to perform sedentary work with certain limitations. (Tr. 374-76).

The plaintiff further argues that there is substantial evidence in the record that the plaintiff is disabled. Plaintiff's Brief [9] at 13. However, the question is not whether there is substantial evidence to support a conclusion contrary to the Commissioner's decision but whether the Commissioner's decision itself is supported by substantial evidence. In fact, the amount of evidence that contradicts the Commissioner's findings is immaterial as long as that decision is supported by substantial evidence, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## CONCLUSION/RECOMMENDATION

The Court finds that the ALJ used the correct legal standards in affirming the Commissioner's decision that the plaintiff is not disabled within the meaning of the Social Security Act. Further, the Commissioner's determinations that the plaintiff's residual functional

capacity rendered her capable of performing a reduced range of sedentary work, and that these jobs exist in significant numbers in the regional and national economy, are supported by substantial evidence.  It is, therefore, the recommendation of this Court that the Commissioner's Motion to affirm the decision of the Commissioner [7] be granted and the denial of benefits affirmed.  The undersigned further recommends that the plaintiff's Motion to reverse the decision of the Commissioner [6] be denied.

### NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 13th day of June, 2007.

s/ Michael T. Parker  
United States Magistrate Judge